**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SATYAM COMPUTER SERVICES, LTD.,

        Petitioner,

v.                                       Case No. 07-CV-12654-DT

VENTURE GLOBAL ENGINEERING, LLC,

        Respondent.

_____/

**OPINION AND ORDER DENYING RESPONDENT'S OBJECTIONS, ADOPTING**
**THE SPECIAL MASTER'S REPORT AND RECOMMENDATION, GRANTING**
**PETITIONER'S "MOTION FOR AN ORDER OF CIVIL CONTEMPT AGAINST**
**VENTURE GLOBAL ENGINEERING, LLC" AND CLOSING CASE**

On September 12, 2007, Special Master Vikramaditya Khanna (the "Special

Master") issued a report and recommendation ("R&R") in the above-captioned matter,

recommending that the court hold Respondent Venture Global Engineering ("VGE") in

contempt of the court's orders. On September 21, 2007, VGE filed timely objections to

the R&R. Plaintiff Satyam Computer Services, Limited ("Satyam") filed its response on

September 28, 2007. For the reasons stated below, the court will deny VGE's

objections, adopt the R&R and grant Satyam's motion for contempt.

**I. BACKGROUND**

The present dispute arose from an Arbitration Award (the "Award"), issued by the

London Court of International Arbitration, whose directives included the following:

    A.      I order VGE to deliver to Satyam share certificates in form suitable for
             immediate transfer to Satyam or its designee evidencing all of VGE's
             ownership interest (legal and/or beneficial) in [Satyam Venture
             Engineering Services ("SVES")]. I further order it to do all that may

> B. Concurrently with the transfer of ownership described in Section 6.1A above, I order Satyam to pay VGE US$622,656, such sum being the net difference between the amount payable by Satyam to VGE for the book value of the shares of SVES (plus interest) and the amount payable by VGE to Satyam for the disgorgement of royalties paid to VGE by SVES (plus interest).

(Award at 24, Pet'r's Mot. Ex. 1.)

On April 14, 2006, Satyam initiated this action by filing a "Petition to Recognize and Enforce a Final, Binding Foreign Arbitration Award." On April 28, 2006, VGE filed a "Cross-Petition to Refuse and Deny Recognition and Enforcement of Award Dated April 3, 2006 or Stay Enforcement" and initiated a similar action in Indian court. The court entered judgment in favor of Satyam, recognizing and enforcing the Award in its entirety, and VGE filed its "Notice of Appeal." The court granted VGE's motion for a stay pending appeal with respect to the monetary portions of the Award, but denied VGE's motion for a stay as to the parties' non-monetary obligations. The court ordered VGE to file a supersedeas bond and deliver its share certificates in SVES to Satyam within fourteen days. The Sixth Circuit likewise denied VGE's motion for stay pending appeal, citing VGE's failure to demonstrate sufficient likelihood of success on the merits. On May 25, 2007, the Sixth Circuit affirmed the court's order enforcing the Award.

On February 6, 2007, Satyam filed a motion for civil contempt against VGE, claiming that VGE had not delivered its share certificates in SVES to Satyam. VGE opposes the motion, contending that Satyam both grossly misrepresents the facts and ignores the steps VGE must take to effectuate the court's order under Indian law.

2

Satyam's reply accuses VGE of providing the court with misstatements and half-truths about the facts and Indian law. The court allowed Satyam to file a lengthy reply brief and permitted VGE to file a sur-reply. In its sur-reply, VGE argues that it has and is doing all it can to transfer the SVES stock in accordance with Indian law. On April 2, 2007, Satyam filed a supplemental brief, without leave of the court, to purportedly update the court on VGE's continuing violation. VGE sought leave to file a supplemental brief addressing Satyam's supplemental brief, which the court denied.

Throughout their numerous and lengthy briefings and declarations, the parties contest whether VGE has in good faith taken the steps necessary under Indian law to transfer the SVES stock. The parties dispute applicable Indian law and whether VGE's actions have been necessary to comply with Indian law. Due to the complexity of the issues involved in this dispute, and the significant time the court would need to invest to research and apply Indian law, the court and the parties agreed that exceptional circumstances exist that make it advantageous to appoint a special master to both effectively and expeditiously assist the court in resolving this motion. *See* Fed. R. Civ. P. 53(a)(1). Accordingly, the court appointed the Special Master, who held a two-day hearing and submitted a R&R. VGE filed timely objections to the R&R and Satyam filed its response to VGE's objections.

## II.  STANDARD

Under Federal Rule of Civil Procedure 53(f), the court shall decide de novo all objections to findings of fact and conclusions of law made or recommended by the Special Master; the court will set aside a ruling by the Special Master on a procedural

matter only for an abuse of discretion. The court retains the sole authority to issue final rulings on matters formally submitted for adjudication.

## III.  DISCUSSION

Under Indian law, the following four steps must be completed for VGE to transfer to Satyam its legal interest in the shares at issue in this case:

1.  Execution of a duly stamped Form 7-B (the instrument of transfer) by both the transferor (VGE) and the transferee (Satyam).

2.  Delivery of the physical share certificates and duly stamped and executed Form 7-B to the company whose stock is being transferred (SVES). . . . .

3.  Fulfilling any other regulatory approvals that may be required by Indian law. . . .

4.  The recording, by SVES, of the new shareholder(s) in its register (i.e., SVES recording that Satyam has acquired VGE's shares and that Satyam owns these shares).

(R&R at 5 (citing Section 108(1) of the 1956 Indian Companies Act).)

There is no dispute regarding step one.  (*Id.* at 6.)  The Special Master determined that although VGE completed step two under Indian law, VGE's method of delivery failed to comply with the court's orders and that VGE's failure was "not due to any impediment under Section 108(1)."  (*Id.* at 9.)  The Special Master also found that step three was met because, even if approval was needed from the Reserve Bank of India ("RBI"), the RBI had given its approval.  However, the Special Master found that VGE's communications to the RBI, purportedly made to seek clarification, were instead misleading challenges to the RBI's approval, which violated the court's orders.  (*Id.* at 13 n.10 and 22.)  Regarding step four, the Special Master determined that "[t]he failure

4

of the SVES board to record Satyam as the new owner is due in large measure to VGE's activities and thus VGE has failed to show that the delay in transferring ownership is due to something other than VGE's actions." (*Id.* at 2.)

### A. Preliminary Matters

### 1. The Hearing

At the outset, VGE reiterates its objections to the Special Master and asks the court to review objections VGE made and the Special Master denied at the hearing. (VGE's Obj. at 5-7.) VGE does not make any new objections to the court's referral of this matter to the Special Master for hearing and the court denies VGE's old objections for the reasons stated in the court's June 21, 2007 order. Regarding VGE's objections made to the Special Master at the hearing, VGE does nothing more than refer the court to the transcript and fails to provide the court with facts or argument showing that the Special Master erred in its determinations. The court's review of the transcript does not reveal errors in the Special Master's evidentiary or other rulings that would alter the court's conclusions on the issues pending before the court. Accordingly, the court rejects these objections.

### 2. Substantial Compliance

Next, VGE contends that it substantially complied with the court's order and that substantial compliance is sufficient to escape a finding of contempt. (VGE's Obj. at 8.) The Sixth Circuit has determined that "the standard of review in contempt cases is whether the court abused its discretion" and a reviewing court "look[s] to see whether the [litigants] took all reasonable steps within their power to comply with the court's

order." *Peppers v. Berry*, 873 F.2d 967, 968-69 (6th Cir. 1989). VGE cites the portion

of the *Peppers* decision where the Sixth Circuit affirmed the district court's finding that

the defendants were not in contempt because "the defendants took all reasonable steps

to achieve substantial compliance with the district court's injunction," *id.* at 969, to

support its position that it need only substantially comply with the court's order.

In its response, Satyam submits that this statement did not change the standard

of review, clearly articulated as a reasonable steps standard, to a "substantial

compliance test" as VGE contends. Furthermore, Satyam identifies significant

differences between VGE's substantial compliance standard and the Sixth Circuit's

reasonable steps standard:

> It is the difference between (a) working towards an objective that is, in the
> alleged contemnor's view, "close enough" to the one ordered by the court
> to count as "substantial compliance" and (b) working towards the objective
> ordered by the court and falling just a little short despite taking every
> reasonable step in your power.

(Satyam's Resp. at 8.) The court agrees. The Sixth Circuit has more recently re-

affirmed that the standard remains "whether the defendant 'took all reasonable steps

within [its] power to comply with the court's order.'" *Elec. Workers Pension Trust Fund*

*of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003)

(quoting *Peppers*, 873 F.2d at 969). Accordingly, VGE must show that it took all

reasonable steps within its power to comply, not merely substantially comply, with the

court's orders.

### 3. Clear and Convincing Standard

VGE also claims that Special Master erred because he did not use the clear and convincing standard.  (VGE's Obj. at 8.)  However, as the court stated in its order appointing the Special Master,

> [b]ecause it is undisputed that Satyam does not currently have in its possession VGE's SVES stock, the court is inclined to find that Satyam has produced clear and convincing evidence that VGE has violated the court's orders requiring such a transfer.  *See N.L.R.B., Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (requiring a movant to produce clear and convincing evidence that the opposing party "violated a definite and specific order of the court requiring him to perform from performing a particular act or acts with knowledge of the court's order").  It is now VGE's burden to show that it "is presently unable to comply with the court's order," *Elec. Workers Pension Trust Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)), and that it "took all reasonable steps within [its] power to comply with the court's order," *id.* (quoting *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989)).

(Order Appointing Special Master at 10.)  The Special Master specifically referred to this portion of the court's order in a footnote on the first page of the R&R: "I have followed the appointment order's direction that VGE bear the burden of showing that it has complied with the court order of 31 July 2006.  However, even if Satyam bore the burden of showing non-compliance my conclusions would remain unchanged."  (R&R at 1 n.1.)

The court therefore disagrees with VGE's claim that the Special Master applied the wrong standard and finds that VGE's decision to deliver its SVES shares to SVES, not Satyam, was a clear violation of the court's order for VGE to deliver the shares to Satyam.  Accordingly, the correct standard is whether VGE has met its burden to show that it was unable to comply with this order.

## B. Delivery

The Special Master recommended that the court hold VGE in contempt for violating the following order: "VGE shall deliver to Satyam (or its designee) share certificates in a form suitable for immediate transfer to Satyam evidencing VGE's ownership interest in [SVES], the parties' joint venture company," (Judgment at 2). It is undisputed that VGE delivered its SVES shares to SVES, not Satyam, and the Special Master determined that Indian law did not prevent VGE from delivering the shares to Satyam pursuant to the court's order. (R&R at 2.)

In claiming "that the text of § 108(1)[1] literally requires delivery to SVES contrary to the Special Master's conclusion of law," (VGE's Obj. at 10), VGE misunderstands both § 108(1) and the R&R. The R&R specifically states that § 108(1) requires that the "Form 7-B and share certificates are delivered to the company (SVES)," but recognizes that § 108(1) is not concerned with "who - the transferor or the transferee - does the delivery." (R&R at 6.) Because the statute does not specify which party must deliver the shares to the company for registration, under the plain language of this statute, one of the following two avenues would be appropriate under Indian law: (1) VGE could deliver the shares to SVES directly or (2) VGE could deliver the shares directly to

---

[1]Section 108(1) states as follows:

A company shall not register a transfer of shares in, or debentures of, the company, unless a proper instrument of transfer duly stamped and executed by or on behalf of the transferor and by or on behalf of the transferee and specifying the name, address and occupation, if any, of the transferee, has been delivered to the company along with the certificate relating to the shares or debentures, or if no such certificate is in existence, along with the letter of allotment of the shares or debentures.

Satyam, and Satyam could deliver the shares to SVES. (*See id.* at 6.) Accordingly, the court adopts the Special Master's legal conclusion that there was no Indian legal impediment to VGE transferring the SVES shares to Satyam and allowing Satyam to then deliver the shares and form 7-B to SVES under Section 108(1) of the 1956 Indian Companies Act.[2] (*Id.*)

Nonetheless, VGE spends the bulk of its brief arguing that it should not be held in contempt because it took one of two permissible options under Indian law when it transferred the shares to SVES rather than Satyam. (VGE's Obj. at 13.) VGE claims that, because the Special Master recognized that Indian law permitted VGE to either deliver its shares to SVES or deliver its shares to Satyam who could in turn deliver the shares to SVES, VGE was not in contempt when it chose to deliver the shares to SVES. (*Id.* at 13-14.) In making this argument VGE seems to misunderstand the nature of this contempt proceeding. Satyam did not file a motion for contempt alleging that VGE violated Indian law; this contempt motion concerns whether VGE violated *this court's* orders and VGE's compliance with Indian law is irrelevant.[3] The fact that VGE's actions were permitted under Indian law does not excuse its violation of the court's order.

VGE relatedly argues that "the term 'transfer' as used in this Court's Order is subject to (at least) two separate and defensible meanings under Indian law" and VGE

---

[2]VGE appears not to challenge this finding. (*See* VGE's Obj. at 1-4, 7-14.) Instead, contrary to its original and long-standing position that Indian law prevented VGE from doing anything other than deliver the shares to SVES, which formed the basis for VGE's defense against Satyam's motion for contempt, VGE now appears to actively argue that Indian law did permit VGE to transfer its shares to Satyam directly. (*Id.*)

[3]Indian law is relevant only to the extent that it actually prevented VGE from complying with the court's orders, which it did not for the reasons stated above.

cannot be sanctioned for choosing one option (transferring the SVES shares to SVES for registration) over the other option (transferring the SVES shares directly to Satyam). (*Id.* at 8-9.)  The court rejects this disingenuous claim because the court did not merely order VGE to transfer the SVES shares; the court ordered VGE to "*deliver to Satyam (or its designee)* share certificates in form suitable for immediate transfer to Satyam." (Judgment at 2 (emphasis added).)  Therefore, although VGE had two methods of legally transferring ownership under Indian law, the court's order required that VGE use only one of the options: transfer the stock directly to Satyam.

The court also rejects VGE's claim that, because "the determinative act under Indian law to accomplish transfer of ownership is that the share certificates are delivered to SVES," and VGE did deliver the shares to SVES, "the Report concedes that VGE has, at a minimum, substantially complied with the Court's Order to transfer its ownership in SVES stock to Satyam."  (VGE's Obj. at 14-15.)  First, for the reasons stated above, the question is whether VGE "took all reasonable steps within [its] power to comply with the court's order," *Peppers*, 873 F.2d at 969, not whether VGE substantially complied with the court's order.  Second, VGE's argument glosses over the important legal difference between VGE delivering the shares directly to SVES and VGE delivering the shares to Satyam.  The court adopts the Special Master's finding that "VGE's delivery of the share certificates and Form 7-B to SVES directly rather than to Satyam has negative consequences for Satyam."  (R&R at 18.)  Under Indian law, if VGE had transferred its SVES shares directly to Satyam, VGE would have transferred its beneficial interest to Satyam; VGE would have a fiduciary duty to Satyam and VGE would be required to follow Satyam's reasonable directions until Satyam is registered as

the new owner and full legal title has passed.  (*Id.* (citations omitted).)  Because VGE

delivered the shares to SVES instead of Satyam, however, VGE did not pass its

beneficial interest in its SVES shares to Satyam and thereby deprived Satyam of its

beneficial ownership.  (*Id.* at 18-19.)  Beneficial ownership could have conferred upon

Satyam significant practical benefits.  For example, Satyam could have directed VGE to

dismiss its board members well over a year ago had the parties been in a fiduciary

relationship.  Therefore, even if VGE were only held to a lesser "substantial compliance"

standard, the court is unpersuaded by VGE's claim that its delivery to SVES, rather than

Satyam, passed even that threshold.

Delivering its SVES shares to Satyam was a reasonable step that was easily

within VGE's power to accomplish and VGE has failed to show that Indian law

prevented it from doing so.  Accordingly, the court adopts the Special Master's finding

that VGE should be held in contempt for violating the court's clear and specific order

requiring VGE to "deliver to Satyam (or its designee) share certificates in a form suitable

for immediate transfer to Satyam evidencing VGE's ownership interest in [SVES], the

parties' joint venture company," (Judgment at 2).

### C.  Registration

The Special Master also recommended that the court hold VGE in contempt

because "VGE has not done all that it can do to expeditiously transfer its SVES shares

to Satyam and is in violation of the second part of the July court order."  (R&R at 22.)

The Special Master lists the three main reasons for his conclusion as follows: (1) VGE

contacted the RBI and provided it with misleading information in an attempt to persuade

the RBI to withdraw its approval; (2) VGE delivered the shares to SVES instead of Satyam, which deprived Satyam of its beneficial ownership; and (3) VGE failed to appear at numerous hearings scheduled in the Indian court proceedings and employed this and similar tactics to significantly delay the proceedings. (R&R at 17-22.) The Special Master concluded that "[t]he failure of the SVES board to record Satyam as the new owner is due in large measure to VGE's activities and thus VGE has failed to show that the delay in transferring ownership is due to something other than VGE's actions." (*Id.* at 2.)

### 1. Definite and Specific

In its objections, VGE raises two principal responses. First, VGE claims that it cannot be held in contempt for violating the court's order to "do all that may otherwise be necessary to effect the transfer of its ownership interest in SVES to Satyam (or its designee)," (Judgment at 2), because this order is not definite and specific. VGE cites *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64 (1967) for the proposition that courts can only use their contempt powers to sanction a party's clear violation of a clear order. (VGE's Obj. at 7.) The court agrees with this unremarkable legal proposition but does not agree that the court's orders were unclear.[4]

The court's Judgment recognized and enforced the Award in its entirety and ordered that

---

[4]To the extent that VGE objects to the R&R because it does not reiterate these undisputed legal standards, (*see* VGE's Obj. at 8), the court rejects this objection because the R&R complies with applicable law.

(i)     . . . VGE shall deliver to Satyam (or its designee) share certificates
        in a form suitable for immediate transfer to Satyam evidencing
        VGE's ownership interest in [SVES], the parties' joint venture
        company;

(ii)    VGE shall do all that may otherwise be necessary to effect the
        transfer of its ownership interest in SVES to Satyam (or its
        designee)

(Judgment at 2.)  While subsection (ii) of the court's order may be ambiguous when read in the abstract, in this context it provided VGE with sufficiently direct and specific directions.  VGE does not, and cannot, dispute that it knew board approval and registration was necessary to transfer its ownership interest in SVES to Satyam.  Accordingly, VGE was required under subsection (ii) of the court's order to take all reasonable steps within its power to facilitate the approval and registration.  VGE, however, did the exact opposite.

The Special Master found that VGE attempted to influence the board by maintaining at a board meeting that there was no RBI approval and therefore a transfer would violate FEMA regulations.  (*Id.* at 14-16.)  The Special Master further determined that, although there were no valid reasons under the shareholders agreement to refuse the transfer, VGE's non-independent nominees to the SVES board relied on VGE's allegations in refusing to approve the transfer without obtaining independent verification of VGE's claims.[5]  (*Id.*)  VGE ultimately blocked any possibility of an expeditious transfer by seeking and obtaining a May 15, 2007 Indian Supreme Court status quo order, which

---

[5]The Special Master noted that VGE's nominees obtained legal advice regarding the legality of the transfer only after VGE obtained a status quo order, which was almost two months after they refused to approve the transfer, and opined that the timing "seem[s] more than coincidental."  (R&R at 16 n.13.)

provided a valid basis for the SVES board to refuse to register the transfer after that date.  (*Id.* at 16.)  Finally, the Special Master noted VGE's continuing practice of delaying proceedings to forestall the transfer.  (*Id.* at 22 n.20.)  The court adopts these findings.

VGE does not come before the court as a party whose good faith efforts to follow a court order failed due to the order's ambiguity.  VGE neither expressed confusion nor requested clarification before VGE acted in direct conflict with the court's order. Moreover, any ambiguity that may or may not exist in the court's order is inapposite because VGE's actions for which it is being held in contempt are unquestionably in direct conflict with any reasonable interpretation of the court's orders.  The court's order required VGE to facilitate the transfer and VGE actively thwarted it.  VGE's claim of ambiguity is a disingenuous attempt to escape responsibility for its actions and will not preclude the court's finding of contempt.

## 2.  VGE's Actions

Second, VGE objects to the notion that its obligation to transfer ownership extends to registration and argues that SVES had the sole responsibility to register the stock after VGE's transfer.  (VGE's Obj. at 18.)  As an initial matter, the court rejects VGE's contention that "the Special Master acknowledges that 'transfer' and 'registration' are separate and distinct actions, and that this Court's Order, while requiring transfer, does not require the 'second step' of delivery of certificates to SVES for registration." (VGE's Obj. at 17.)  To substantiate this claim, VGE quotes as follows from the R&R:

> The July court order required delivery to Satyam.  After such delivery
> Satyam could then deliver the materials to SVES and legal title could pass

14

> upon SVES recording Satyam as the new owner (***the court order did not require this second step***, but common sense suggests that Satyam would do this.)

(VGE's Obj. at 17 (emphasis added by VGE).)  What VGE apparently fails to note is that the last part of the quote refers to Satyam, making it clear that the voluntary act is not the registration, but instead Satyam's delivery of the materials to SVES.

The court recognizes that, under Indian law, SVES is the entity that must register the shares after the shares were delivered to SVES.  Indian Companies Act § 108(1).  Therefore, the fact that SVES has not yet registered the shares does not *necessarily* mean that VGE should be held in contempt.  In this case, however, the court agrees with the Special Master's conclusion that "[t]he failure of the SVES board to record Satyam as the new owner is due in large measure to VGE's activities," (R&R at 2).

First, the court is unpersuaded by VGE's claim that the Special Master based his conclusion "on the false notion that this Court's Order required VGE to accomplish registration of the shares and that it was obliged to force its nominees on the SVES board to vote for registration," (VGE's Obj. at 21 (emphasis omitted)).  As the court explained above, although the court did not, and cannot require VGE to register the shares, the court's order requiring VGE "to do all that may otherwise be necessary to effect the transfer," (Judgment at 2), required VGE to remove any impediment that was within its power to remove, and very clearly prohibited VGE from interfering with any steps, such as registration, that was necessary to effect the transfer.  Therefore, although VGE was not forced to "accomplish registration" or "force its nominees on the

SVES board to vote for registration," VGE was required to encourage its nominees to register the shares and VGE was prohibited from interfering with the registration.

Finally, VGE contends that even if it had some obligation relating to the registration, "Satyam preferred [sic] absolutely no evidence that VGE improperly communicated with its SVES nominees." (VGE's Obj. at 22.) VGE claims that "[t]he testimony of Timothy Bradley was the only evidence based upon personal knowledge offered at the hearing regarding VGE's activities with respect to registration," and "Mr. Bradley testified that VGE . . . advised its nominees on the SVES board of directors of the issues relating to FEMA compliance but . . . it never told the directors to vote against the transfer, but rather to exercise their independent fiduciary duty." (VGE's Obj. at 22.) In so arguing, VGE admits that it told the board members that a transfer would violate FEMA, when in fact it did not, and by that act VGE impeded the proper transfer of the shares and violated the court's order. Furthermore, the Special Master rejected Bradley's testimony and determined that VGE's directors were neither independent nor acting independently because (1) there were no valid reasons under the shareholders agreement to refuse the transfer, (2) VGE's non-independent nominees to the SVES board relied on VGE's allegations in refusing to approve the transfer without obtaining independent verification of VGE's claims and (3) VGE's nominees obtained legal advice regarding the legality of the transfer only after VGE obtained a status quo order. (R&R at 15-16.)

Moreover, VGE's communications with its SVES nominees is not the only instance where VGE attempted to delay and derail the registration process. VGE

sought and obtained an Indian court status quo order, which now prevents registration. (*Id.* at 15-16.)  After the status quo order was put in place, VGE has repeatedly succeeded in delaying ultimate resolution of the Indian court proceedings.  (*Id.* at 22 n.20.)  For the above reasons, the court finds VGE in contempt of the court's order to "do all that may otherwise be necessary to effect the transfer of its ownership interest in SVES to Satyam (or its designee)."  (Judgment at 2.)

### E.  RBI Approval

In its initial response to Satyam's motion for contempt, VGE argued that it was unable to deliver the shares to Satyam because they had not yet received RBI approval for the transfer.  (VGE's Contempt Resp. at 5.)  VGE maintained this position throughout the proceedings before the Special Master, despite Satyam's adamant and well-supported position that the RBI has already given its approval for the transfer.  Only after the Special Master issued its R&R, which not only found that the RBI had previously approved the transfer, but recommended that the court hold VGE in contempt for its misleading attempts to persuade the RBI to withdraw its approval, does VGE now change its position.

In its objections, VGE maintains that it did not mislead the RBI by selectively quoting from the Award because VGE included the Award in its communications to the RBI.  (VGE's Obj. at 20-21.)  Moreover, VGE now claims that its communications with the RBI are irrelevant because RBI approval is either unnecessary or has been received.  (*Id.*)  VGE's shifting positions in this regard, which have only served to

prolong these proceedings and Satyam's ultimate relief, is further evidence of its pattern of avoiding the court's order enforcing the Award.

## F. Remedies

In the R&R, the Special Master recommended a number of remedies. First, the Special Master proposed that the court order VGE to deliver all its SVES share certificates to Satyam. (R&R at 22.) The court recognizes that, after the hearing, VGE has "directed SVES to deliver the certificates to Satyam," (VGE's Obj. at 17), an act VGE characterizes as "undoubtedly meaningless," (*id.*). Although the court agrees that this delivery is practically meaningless for as long as the status quo order remains in place, had VGE complied with the court's orders and delivered its shares to Satyam at the outset, that delivery would not have been meaningless for the reasons stated above.

Second, the Special Master recommended that the court order VGE to "encourage its nominees to record the transfer recognizing Satyam as the new owner and then resign from the SVES board." (R&R at 22.) VGE has no specific objection to this proposal, and the court will adopt the recommendation with one modification. Because the status quo must be lifted before VGE can encourage its nominees to register the transfer, in the interest of time the court will direct VGE to simply dismiss each of its nominees and replace them with board members of Satyam's choosing.

Third, the Special Master recommended that the court order VGE to request that the Indian Supreme Court withdraw the status quo order it entered upon VGE's motion. (*Id.* at 23.) VGE objects to this proposed remedy, claiming that it is "beyond the four corners" of the court's order and constitutes an "anti-suit injunction." (VGE's Obj. at 23-

25.)  VGE's request for the status quo order necessarily interfered with the transfer and therefore violated the court's order.  This proposed remedy does nothing more than remove the violation and is therefore soundly within the four corners of the court's order.  Furthermore, the court adopts the Special Master's finding that this remedy does not constitute an anti-suit injunction because it does not prohibit VGE from pursuing the merits of its case before the Indian Supreme Court.  (R&R at 23 n.21.)  VGE responds by contending that withdrawing the status quo order would have the same effect as an anti-suit injunction because it would deprive VGE of the benefit of its victory if the Indian Supreme Court finds in its favor.[6]  The court is unpersuaded and finds VGE's claim ironic based on the court's determination that VGE has been depriving Satyam of the benefit of the Award and the court's Judgment for well over a year.  Moreover, the court is confident that if VGE does prevail in its Indian court action, the Indian Supreme Court will fashion an appropriate remedy.

Fourth, the Special Master proposed that the court impose a fine for each day that VGE fails to comply with the court's order "[t]o ensure speedy enforcement."  (*Id.* at 23.)  VGE objects, maintaining that the recommended fines are arbitrary and constitute criminal sanctions because they are punitive.  (VGE's Obj. at 25-27.)  In light of VGE's documented non-compliance, the court determines that the recommended fine of $10,000 per day of non-compliance is reasonably calculated to motivate VGE to rapidly comply with this order.  Furthermore, the court has previously determined that a daily fine such as the one recommended here is civil, not criminal in nature because it is

---

[6]The court notes that VGE's Indian court action was dismissed both by the trial and appeals court; victory at the Indian Supreme Court level is not assured.

intended only to encourage VGE's compliance and will cease upon VGE's compliance. (*See* 6/21/07 Order at 6-7 (citing *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828 (1994) (stating that even imprisonment is civil in nature when "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket")).)

Finally, the Special Master recommended that the court consider imposing sanctions on Larry Winget, the sole owner of VGE, if VGE has not complied with the court's order within a certain period of time. (R&R at 23.) The Special Master further proposed that the court direct Tim Bradley, attorney for VGE, to inform Winget of this potential sanction. VGE objects to the recommendation that Bradley inform Winget of the court's orders because the court "does not have jurisdiction over Mr. Bradley to order him to take any act whatsoever." (VGE's Obj. at 28.) The court notes that although Bradley is VGE's attorney, he is not an attorney of record in this proceeding. Therefore, the court will direct VGE's attorney of record John Anding to serve Winget with a copy of this order.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that VGE's objections [Dkt. # 122] are DENIED and the Special Master's September 12, 2007 R&R [Dkt. # 119] is ADOPTED IN FULL AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Satyam's "Motion for an Order of Civil Contempt" [Dkt. # 48] is GRANTED. VGE is held in contempt of court for its violations of the court's orders.

20

IT IS FURTHER ORDERED that VGE shall

(1)     not later than January 23, 2008, request, in writing and without

        reservation, that the Indian Supreme Court withdraw its status quo order;[7]

        and

(2)     not later than January 25, 2008, at 1:00 p.m. EDT, file on the docket of

        this court an affidavit stating that it has complied with the requirement in

        (1) above, and attaching a verified copy of the document(s) by which it has

        achieved compliance; and

(3)     not later than January 23, 2008, dismiss its board members and replace

        each of them with individuals nominated by Satyam;[8] and

(4)     not later than January 25, 2008, at 1:00 p.m. EDT, file on the docket of

        this court an affidavit stated that it has complied with the requirement in

        (3), above; and

(5)     take any additional steps in its power that are either necessary to comply

        with (1) and (3) above or necessary to transfer both legal and beneficial

        interest in VGE's SVES shares to Satyam; and

(6)     refrain from any action that may frustrate any aspect of the transfer, board

        replacement or the withdrawal of the status quo order.

---

[7]VGE may use the form submitted by Satyam, (Petition Template, Satyam's 7/25/07 Proposed Forms Ex. 1), or something substantially similar.

[8]To facilitate the ordered replacement, Satyam is directed to forthwith provide to VGE the names of its nominees.

IT IS FURTHER ORDERED that, unless VGE has strictly complied and filed both of the necessary affidavits specified above by the date and time noted, VGE shall remit to the court a civil fine in the amount of $10,000.00 commencing on January 25, 2008, at 1:01 p.m. EDT, and continuing at a rate of $10,000.00 for each 24-hour period during which non-compliance continues. The civil fine shall be remitted to the Clerk of the court each day not later than 1:01 p.m. EDT with the exception of weekend days and court holidays, during which time the fine accumulates and the appropriate amount is due in full upon the next business day at 1:01 p.m. EDT. Complying only in part, which may include filing only one of the two required affidavits, does not comply with this order, either actually or substantially.

IT IS FURTHER ORDERED that if VGE has failed to strictly comply with the requirements of action and verification ordered above but simultaneously has complied with the requirement of remitting the civil fine and that status continues until January 31, 2008, on February 1, 2008, the amount of the civil fine to be remitted on a daily basis is $25,000.00, continuing until compliance is achieved.

IT IS FURTHER ORDERED that if VGE has failed to remit the required civil fine upon its failure to strictly comply with the requirements of action and verification ordered above, or has failed to strictly comply with the requirements of action and verification ordered above but simultaneously has complied with the requirement of remitting the required civil fine, and that status continues until February 8, 2008, Satyam is directed to petition the court for an order that will require Larry Winget to show cause why he

should not be held personally in contempt and incarcerated pending compliance with the orders specified herein.

IT IS FURTHER ORDERED that, not later than January 21, 2008, attorney John Anding serve upon Larry Winget a copy of this Order and, not later than January 22, 2008, at 1:00 p.m. EDT, file on the docket of this court an affidavit stating that he has complied with this requirement.

IT IS FURTHER ORDERED that, after the status quo order is removed and registration is complete, VGE and Satyam shall jointly communicate to Citibank its obligation to transfer to VGE the amount due to it under the Award and the court's orders.

IT IS FURTHER ORDERED that, inasmuch as the issues in controversy have been resolved, the instant matter is deemed closed.  The court shall retain jurisdiction of this matter pending satisfaction of this order.


s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  January 17, 2008


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 17, 2008, by electronic and/or ordinary mail.


s/Lisa G. Wagner_____
Case Manager and Deputy Clerk
(313) 234-5522